FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Jun 11, 2024

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MADISON H.,[1] | No. 2:23-cv-00242-MKD |
| Plaintiff, | ORDER AFFIRMING THE COMMISSIONER'S DECISION |
| v. | |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[2] | **ECF Nos. 8, 10** |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

1    Before the Court are the parties' briefs.  ECF Nos. 8, 10.  The Court, having

2    reviewed the administrative record and the parties' briefing, is fully informed.  For

3    the reasons discussed below, the Court affirms the Commissioner's decision.

4                              **JURISDICTION**

5    The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

6                           **STANDARD OF REVIEW**

7    A district court's review of a final decision of the Commissioner of Social

8    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

9    limited; the Commissioner's decision will be disturbed "only if it is not supported

10   by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

11   1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

12   reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

13   (quotation and citation omitted).  Stated differently, substantial evidence equates to

14   "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

15   citation omitted).  In determining whether the standard has been satisfied, a

16   reviewing court must consider the entire record as a whole rather than searching

17   for supporting evidence in isolation.  *Id.*

18   In reviewing a denial of benefits, a district court may not substitute its

19   judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

20   1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

ORDER - 4

1    If the severity of the claimant's impairment does not meet or exceed the

2 severity of the enumerated impairments, the Commissioner must pause to assess

3 the claimant's "residual functional capacity."  Residual functional capacity (RFC),

4 defined generally as the claimant's ability to perform physical and mental work

5 activities on a sustained basis despite his or her limitations, 20 C.F.R. §

6 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

7    At step four, the Commissioner considers whether, in view of the claimant's

8 RFC, the claimant is capable of performing work that he or she has performed in

9 the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

10 capable of performing past relevant work, the Commissioner must find that the

11 claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

12 performing such work, the analysis proceeds to step five.

13    At step five, the Commissioner considers whether, in view of the claimant's

14 RFC, the claimant is capable of performing other work in the national economy.

15 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

16 must also consider vocational factors such as the claimant's age, education and

17 past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

18 Commissioner must find that the claimant is not disabled.  20 C.F.R. §

19 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the

20

ORDER - 5

analysis concludes with a finding that the claimant is disabled and is therefore

entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 12, 2020, Plaintiff applied for Title XVI supplemental

security income benefits alleging an amended disability onset date of November

17, 2020.[3]  Tr. 18, 46, 120, 255-76.  The application was denied initially, and on

reconsideration. Tr. 163-67, 169-71.  Plaintiff appeared before an administrative

---

[3] Plaintiff previously applied for Title XVI benefits on January 30, 2017; the

application was denied initially and on reconsideration, and an ALJ denied

Plaintiff's application on February 6, 2020.  Tr. 81-98.  Plaintiff appealed the

denial, which resulted in the Appeals Council declining to review the decision, Tr.

103-08, and this Court affirming the ALJ's decision, Tr. 132-57.

ORDER - 6

law judge (ALJ) on July 18, 2022.  Tr. 40-77.  On September 20, 2022, the ALJ

denied Plaintiff's claim.  Tr. 15-39.

At step one of the sequential evaluation process, the ALJ found Plaintiff has

not engaged in substantial gainful activity since November 12, 2020.  Tr. 22.  At

step two, the ALJ found that Plaintiff has the following severe impairments: major

depressive disorder and generalized anxiety disorder with panic features.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 23.  The ALJ then concluded that Plaintiff has the RFC to perform

a full range of all work with the following limitations:

> [Plaintiff] is limited to simple routine tasks, would need to avoid work
> with the general public, can have occasional and superficial
> interaction with coworkers with no tandem tasks being performed,
> could handle only occasional changes in a work setting, and should
> avoid fast-paced, timed assembly work.

Tr. 26.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 33.  At

step five, the ALJ found that, considering Plaintiff's age, education, work

experience, RFC, and testimony from the vocational expert, there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as hospital cleaner, auto detailer, and hand packager.  Tr. 34.  Therefore, the

ALJ concluded Plaintiff was not under a disability, as defined in the Social

ORDER - 7

Security Act, from the date of the application through the date of the decision.  Tr. 35.

On June 26, 2023, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 8 at 4-14.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in her consideration of the opinion of David Peterson, Ph.D.  ECF No. 8 at 4-8.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

ORDER - 8

C.F.R. § 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 416.920c(a)-(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative

ORDER - 9

medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies.  *Id*.  The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has

ORDER - 10

1  performed or ordered from specialists, and whether the medical source has

2  examined the claimant or merely reviewed the claimant's records. *Id.* at 792.

3  However, the ALJ is not required to make specific findings regarding the

4  relationship factors. *Id.* Even under the new regulations, an ALJ must provide an

5  explanation supported by substantial evidence when rejecting an examining or

6  treating doctor's opinion as unsupported or inconsistent. *Id.*

7          Dr. Peterson, a psychological expert, testified at Plaintiff's hearing and

8  rendered an opinion on Plaintiff's functioning. Tr. 49-58. Dr. Peterson stated

9  Plaintiff had been diagnosed with agoraphobic disorder, panic attacks, generalized

10  anxiety disorder, mild major depressive disorder with anxious distress, and panic

11  disorder. Tr. 50-51. Prior to the onset date, Plaintiff was also diagnosed with a

12  specific learning disorder of reading and expression and a rule out diagnosis of

13  autism spectrum disorder. Tr. 21-52. Dr. Peterson stated there was some evidence

14  of the A Criteria being met for Listing 12.04 and Listing 12.06, but as to the B

15  Criteria, Plaintiff had only moderate limitations in understanding, remembering, or

16  applying information, interacting with others, concentrating, persisting, or

17  maintaining pace, and adapting and managing oneself. Tr. 52-56. Dr. Peterson

18  further opined Plaintiff did not meet the C Criteria. Tr. 56. As such, Dr. Peterson

19  opined Plaintiff's impairments did not meet or equal a listing. Tr. 52-56. Dr.

20  Peterson opined that with the assistance of a vocational rehabilitation counselor,

Plaintiff "should be able to attempt a position that involves simple repetitive tasks. And at this point, no public contact . . . recommend working with thing as opposed to people . . . and only occasional superficial contact with coworkers and supervisors."  Tr. 56-57.  Dr. Peterson stated that Plaintiff's sleep pattern "[w]ould preclude any attendance really."  Tr. 58.  The ALJ found Dr. Peterson's opinion was persuasive, with the exception of the portion of the opinion regarding Plaintiff's sleep pattern impairing attendance.  Tr. 32-33.

The ALJ found the opinion that Plaintiff's sleep pattern would preclude regular attendance was inconsistent with the record as a whole.  Tr. 33. Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2). The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is.  20 C.F.R. § 416.920c(c)(2).

Plaintiff testified that she would go to bed at midnight, sleep until 6:00 a.m., get up and help with her sister's children, nap with the kids from noon to one, go home at 5:00 p.m. and nap until 8:00 p.m.  Tr. 55-56.  The ALJ noted that despite her testimony regarding the sleep schedule Dr. Peterson opined would negatively impact work attendance, Plaintiff also testified that she watched her sister's children approximately eights hours per day, which is inconsistent with her reported sleep pattern.  Tr. 33, 55-56.  Plaintiff was also noted in treatment records

ORDER - 12

as being alert and awake, and able to sustain conversations without difficulty.  Tr.

33.  The ALJ found plaintiff's ability maintain attention and sustain conversations

was inconsistent with hypersomnolence or other sleep related symptoms.  *Id.*

Plaintiff contends the ALJ erred by omitting important information related to

the childcare activities, including the fact that Plaintiff had only been watching the

children on her own for one month prior to the hearing.  ECF No. 8 at 5 (citing Tr.

65).  Plaintiff also contends the ALJ erred in failing to consider that Plaintiff's

mother previously helped with the childcare, one of the children was in school for

half the day while the other was in school full-time during the school year, and

even while providing childcare, Plaintiff napped during the day.  ECF No. 8 at 5-6

(citing Tr. 56, 59, 65).  While Plaintiff offers an alternative interpretation of the

evidence, the ALJ reasonably found Plaintiff's ability to watch two children for

eight hours per day was inconsistent with an ability to work due to her reported

irregular sleep schedule.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

1190, 1198 (9th Cir. 2004) (recognizing that when the evidence in the record is

subject to more than one rational interpretation, the court defers to the ALJ's

finding).

Next, Plaintiff contends the ALJ's citations to medical records do not

amount to substantial evidence to support the rejection of Dr. Peterson's opinion.

ECF No. 8 at 6-7.  Plaintiff contends she has never alleged significant difficulties

1    with being alert, awake, cooperating, paying attention, or sustaining a

2    conversation, and thus the medical records documenting normal findings regarding

3    such things was not inconsistent with the opinion.  *Id.*  Plaintiff also contends the

4    medical records document her reported impaired sleep habits.  *Id.* (citing Tr. 371,

5    410, 430, 439, 445, 604).  Plaintiff notes Dr. Peterson reviewed the same records

6    as the ALJ and came to a different conclusion and states the "question is whether

7    the opinion of a medical professional should have been give[n] more deference

8    than the ALJ's lay opinion."  ECF No. 8 at 7-8.  However, the Court finds the ALJ

9    did not substitute her opinion for Dr. Peterson's opinion but rather considered the

10    supportability and consistency of the opinion and gave reasons supported by

11    substantial evidence to reject the opinion.

12        Dr. Peterson's opinion that Plaintiff's sleep schedule would impair her

13    ability to attend work is largely based on Plaintiff's self-reported sleep schedule.

14    Tr. 37, 58.  Dr. Peterson noted multiple medical sources opined Plaintiff has

15    marked limitations in persistence, which is consistent with an inability to complete

16    a regular work shift due to "sleeping so much."  Tr. 58.  Dr. Peterson stated

17    Plaintiff's reported sleep schedule would not allow for a regular eight continuous

18    hour schedule required of competitive work.  *Id.*  However, Dr. Peterson did not

19    cite to any objective evidence to support Plaintiff's self-reported impaired sleep

20    schedule.  Plaintiff cites only to further self-report.  ECF No. 8 at 7-8.  The ALJ

ORDER - 14

reasonably found that someone with as significantly impaired sleep as Plaintiff reports would be expected to have objective evidence of such impairment, such as observed difficulties staying awake, being alert and oriented, and maintaining concentration and attention. There is no such objective evidence in the record. Tr. 33.

Additionally, Plaintiff did not mention her reported sleep impairment nor her reported multiple naps per day at most appointments and examinations. For example, at the 2022 consultative examination, Plaintiff was asked what she does from the time she wakes up to when she goes to bed, and she did not mention any napping, and she stated insomnia was a symptom without further details of a sleep impairment. Tr. 620. In November 2019, Plaintiff reported one month of ongoing exhaustion that caused her to nap daily. Tr. 445. However, at a 2020 examination, Plaintiff did not report significant sleep issues, and reported caring for her friends' five-month-old and nine-month-old daily. Tr. 417. The Court finds the ALJ reasonably rejected Dr. Peterson's opinion. Plaintiff is not entitled to remand on these grounds.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 8 at 8-14. An ALJ engages in a two-step analysis to determine whether to discount a claimant's

1    testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

2    "First, the ALJ must determine whether there is objective medical evidence of an

3    underlying impairment which could reasonably be expected to produce the pain or

4    other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

5    "The claimant is not required to show that [the claimant's] impairment could

6    reasonably be expected to cause the severity of the symptom [the claimant] has

7    alleged; [the claimant] need only show that it could reasonably have caused some

8    degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

9        Second, "[i]f the claimant meets the first test and there is no evidence of

10   malingering, the ALJ can only reject the claimant's testimony about the severity of

11   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

12   rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

13   omitted).  General findings are insufficient; rather, the ALJ must identify what

14   symptom claims are being discounted and what evidence undermines these claims.

15   *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

16   *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

17   explain why it  discounted claimant's symptom claims)).  "The clear and

18   convincing [evidence] standard is the most demanding required in Social Security

19   cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

20   *Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER - 16

1    Factors to be considered in evaluating the intensity, persistence, and limiting

2    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

3    duration, frequency, and intensity of pain or other symptoms; 3) factors that

4    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

5    side effects of any medication an individual takes or has taken to alleviate pain or

6    other symptoms; 5) treatment, other than medication, an individual receives or has

7    received for relief of pain or other symptoms; 6) any measures other than treatment

8    an individual uses or has used to relieve pain or other symptoms; and 7) any other

9    factors concerning an individual's functional limitations and restrictions due to

10   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

11   416.929(c).  The ALJ is instructed to "consider all of the evidence in an

12   individual's record," to "determine how symptoms limit ability to perform work-

13   related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

14       The ALJ found that Plaintiff's medically determinable impairments could

15   reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

16   statements concerning the intensity, persistence, and limiting effects of her

17   symptoms were not entirely consistent with the evidence.  Tr. 26.

18   *1.  Activities of Daily Living*

19       The ALJ found Plaintiff's activities of daily living were inconsistent with

20   her allegations.  Tr. 26-29.  The ALJ may consider a claimant's activities that

ORDER - 17

undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.  Additionally, the ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain.  *Rollins,* 261 F.3d at 857.  However, if the care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity.  *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

While Plaintiff alleges anxiety impaired her ability to complete activities and leave the home unaccompanied, she reported being able to grocery shop alone, spend time with friends, go out alone, handle her personal care and household chores, and read and watch television.  Tr. 26-29.  Plaintiff reported caring for her

ORDER - 18

friends' two young children, and later caring for her sisters' two children for eight hours per day. *Id.* Plaintiff reported having assistance with the childcare for only portions of the time she was providing care. *Id.* Plaintiff missed an appointment in August 2021 because she was "busy with friends," and she ended another session to go to the store. Tr. 28 (citing Tr. 593, 595). Plaintiff also started working toward her GED, and studying for her driver's license test, while continuing to babysit and apartment hunt. Tr. 28 (citing Tr. 611, 613, 25). She reported she was dropped from her online schooling due to missing appointments because of her anxiety. Tr. 567.

The ALJ found Plaintiff's allegation of needing reminders to maintain personal care was not supported by the records. Tr. 29 (citing Tr. 620-21). Plaintiff cites to her self-reported difficulties with activities of daily living as evidence the ALJ erred in her consideration of her activities. ECF No. 8 at 8-9. Plaintiff also contends the ALJ cited largely to activities that are not relevant to Plaintiff's allegations of panic attacks when she goes out in public or interacts with strangers. *Id.* at 12-13. However, Plaintiff reported in some portions of the record that she could go out alone, and interact with others for activities like grocery shopping, without assistance. Tr. 27. Plaintiff contends she reported she relies on others to leave her home, ECF No. 8 at 13-14, however Plaintiff reported she does not have a driver's license and relies on others or public transportation to get

1  places, Tr. 619.  Plaintiff reported she got out of the house when she could and did

2  not mention needing someone to accompany her to leave the home.  Tr. 620.  The

3  ALJ reasonably rejected Plaintiff's symptom claims as inconsistent with her

4  activities of daily living.

5      *2. Inconsistent Objective Medical Evidence*

6      The ALJ found Plaintiff's allegations were inconsistent with the objective

7  medical evidence.  Tr. 26-29.  An ALJ may not discredit a claimant's symptom

8  testimony and deny benefits solely because the degree of the symptoms alleged is

9  not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v.*

10  *Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch v.*

11  *Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical

12  evidence is a relevant factor, along with the medical source's information about the

13  claimant's pain or other symptoms, in determining the severity of a claimant's

14  symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §

15  416.929(c)(2).  Mental status examinations are objective measures of an

16  individual's mental health.  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

17      The ALJ found many of the mental status examinations throughout the

18  record reflect largely normal findings.  Tr. 26-29.  Plaintiff's speech, thoughts,

19  perception, memory, fund of knowledge, abstract thought, behavior,

20  communication, cooperation, and insight and judgment were normal.  Tr. 417-22,

ORDER - 20

535, 539, 564, 576, 580, 582, 630, 632.  While Plaintiff had some abnormalities on examination, such as mild problems with serial 3s, and moderate difficulty following one conversation, there is no indication Plaintiff was generally unable to concentrate or attend.  Tr. 27, 29 (citing Tr. 417-22, 619-26).  Even at the exam where she had some difficulty following a conversation, Plaintiff was able to spell "world" backward, recall words after a delay, understand instructions, and complete multiplication problems.  Tr. 29 (citing Tr. 619-26).  At multiple appointments, Plaintiff reported things were going well, she had improvement and stabilization with medication, and she was able to manage her depression and anxiety appropriately.  Tr. 27-28, 549, 553, 565, 571.  Plaintiff also reported making progress towards her therapy goals.  Tr. 576, 580, 582.  Plaintiff offers an alternative interpretation of the evidence, ECF No. 8 at 10-12, however, the ALJ's interpretation of the evidence is reasonable.  The ALJ's finding that Plaintiff's allegations were inconsistent with the objective evidence is supported by substantial evidence.

   *3.  Ability to Work*

   The ALJ found Plaintiff's work history was inconsistent with her allegations.  Tr. 26-29.  Plaintiff's own perception of her ability to work is a proper consideration when analyzing her symptom claims.  *See Barnes v. Comm'r of Soc. Sec.*, 2018 WL 545722 (E.D. Wash. Jan. 24, 2018) ("Evidence of Plaintiff's

ORDER - 21

preparedness to return to work, even if an optimistic self-assessment, is significant

to the extent that the Plaintiff is willing and able to work, as that belief indicates

her allegation of symptoms precluding work are not credible."); *see also Bray*, 554

F.3d at 1227 (approving of ALJ's rejection of Plaintiff's symptom testimony in

part because Plaintiff sought work during period of alleged disability); *see also*

*Woznick v. Colvin*, No. 6:15-cv-00111-AA, 2016 WL 1718363, at *4 (D. Or. Apr.

29, 2016) (ALJ reasonably discredited Plaintiff's symptom testimony in light of

her efforts to seek work); *Lizarraga v. Colvin*, No. CV 14-9116-FFM, 2016 WL

1604704, at *4 (C.D. Cal. Apr. 21, 2016) (same).

As discussed *supra*, Plaintiff babysat multiple children throughout the

relevant adjudicative period.  Plaintiff reported wanting to take on more children to

babysit in November 2020, and stated she was meeting supported employment to

discuss potentially getting a job.  Tr. 536.  Plaintiff later reported contemplating

getting part-time work, while continuing to babysit multiple children.  Tr. 609,

611, 613, 615.  At the time of her hearing, Plaintiff had been watching two young

children for eight hours per day with minimal assistance.  Tr. 29.  The ALJ

reasonably found Plaintiff's ability to babysit, while maintaining her other

activities described *supra*, is similar to the ability to maintain full-time

employment, which is inconsistent with her allegations of disabling limitations.

The ALJ offered clear and convincing reasons, supported by substantial evidence,

to reject Plaintiff's symptom claims.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Martin O'Malley as Defendant and update the docket sheet.

2. Plaintiff's Brief, **ECF No. 8**, is **DENIED**.

3. Defendant's Brief, **ECF No. 10**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED June 11, 2024.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 23